# NO. 12-19-00304-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | |
|---|---|
| *EX PARTE:* | §      *APPEAL FROM THE 2ND* |
| | §      *JUDICIAL DISTRICT COURT* |
| *ROJELIO BARBOSA* | §      *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Rojelio Barbosa appeals from a trial court order denying him relief on his application for writ of habeas corpus seeking a reduction in bail. We reverse and remand.

## BACKGROUND

Appellant was charged by indictment with one count of continuous sexual abuse of a child. Appellant filed a pretrial application for writ of habeas corpus seeking probable cause finding and/or bail reduction. At the hearing on the application, Appellant abandoned his probable cause challenge and sought to reduce his bail bond from $1,000,000 to $25,000. At the conclusion of the hearing, the trial court denied relief. This proceeding followed.

## AMOUNT OF BOND

In his sole issue, Appellant argues that the trial court abused its discretion by declining to reduce the amount of the bail bond, which he contends is excessive and oppressive in light of Appellant's economic circumstances and the nature of the alleged offense.

### Standard of Review

The decision regarding a proper bail amount lies within the sound discretion of the trial court. TEX. CODE CRIM. PROC. ANN. art. 17.15 (West 2015). Accordingly, we review the trial court's ruling on a request to reduce bail under an abuse of discretion standard. *See Ex parte Rubac,* 611 S.W.2d 848, 850 (Tex. Crim. App. 1981); *Clemons v. State,* 220 S.W.3d 176, 178 (Tex. App.—

Eastland 2007, no pet.) (per curiam). In determining whether the trial court abused its discretion, we do not substitute our judgment for that of the trial court. *Montgomery v. State*, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990). The purpose of our review is to determine whether the trial court's decision was made without reference to any guiding rules or principles of law, or in other words, whether the decision was arbitrary or unreasonable. *Id.* at 380. An abuse of discretion occurs when a trial court's decision is so clearly wrong as to lie outside the zone of reasonable disagreement. *Id.* at 391 (op. on reh'g).

## Applicable Law

The primary purpose of setting a pretrial bond should be to secure Appellant's presence at trial. *See Ex parte Rodriguez*, 595 S.W.2d 549, 550 (Tex. Crim. App. [Panel Op.] 1980); *Ex parte Rincon*, Nos. 04-13-00715-CR–04-13-00718-CR, 2014 WL 2443870, at *1 (Tex. App.–San Antonio May 28, 2014, no pet.) (mem. op., not designated for publication). The amount of the bond necessary to achieve that purpose is committed to the trial court's sound discretion, although its discretion is bounded and guided by constitutional and statutory provisions. *See Ex parte Estrada*, 398 S.W.3d 723, 724 (Tex. App.–San Antonio 2008, no pet.). The federal constitution, our state constitution, and our state laws prohibit "excessive" bail. U.S. CONST. amend. VIII; TEX. CONST. art. I, § 13 (West 2007); TEX. CODE CRIM. PROC. ANN. art. 1.09 (West 2005). Article 17.15 of the Texas Code of Criminal Procedure provides that "bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with[;]" however, "[t]he power to require bail is not to be so used as to make it an instrument of oppression." TEX. CODE CRIM. PROC. ANN. art. 17.15(1), (2). Although a defendant's ability to make bail must be considered, it is not a controlling consideration. *See id.* art. 17.15(4); *Rodriguez*, 595 S.W.2d at 550. The trial court also must consider the nature of the defendant's offenses and the circumstances under which he allegedly committed them as well as the future safety of the community if the defendant is released on bail. *See* TEX. CODE CRIM. PROC. ANN. art. 17.15(3), (5). Apart from these statutory considerations, the trial court also may consider the defendant's links to the community, including his family ties, employment history, prior criminal record, the existence of other bonds against him, and his compliance with the conditions of those bonds. *See Estrada*, 398 S.W.3d at 724.

## Hearing on Application

In the instant case, Appellant was charged with continuous sexual abuse of a child, which is a first-degree felony punishable by imprisonment for life or a term of five to ninety-nine years in

prison. *See* TEX. PENAL CODE ANN. § 12.32 (West 2019); § 21.02(h) (West 2019). Jacksonville Police Department Investigator David Sinclair testified that he investigated the allegations against Appellant. As part of that investigation, he interviewed Appellant and observed the Children's Advocacy Center (CAC) interview with the alleged victim. Investigator Sinclair testified that the alleged victim, who is a member of Appellant's family, indicated that Appellant placed his penis in her mouth seven or eight times over the course of a two-year period. The victim further stated that Appellant would take her into the closet, push her to her knees, unzip his pants, remove his penis, and place it in her mouth.

Investigator Sinclair testified that when he interviewed Appellant, Appellant initially denied the allegations against him. However, toward the end of the interview, Appellant stated that it was possible that he could have committed the actions if he was sleepwalking or intoxicated. Investigator Sinclair further stated that there was a prior outcry by another victim, who is Appellant's daughter. However, that investigation included allegations that Appellant touched her buttocks and not her anus or sexual organ, and the case was closed. On cross examination, Sinclair testified that Appellant cooperated when he was arrested and spoke with him voluntarily after being read his *Miranda* rights. He further stated that Appellant did not have any previous convictions for violent offenses and was not known as a gang-member.

Matilda Barbosa, Appellant's sister, testified on his behalf. She testified that she has lived in Dialville for over twenty years and lives with her parents who have also lived in Dialville for more than twenty years. Appellant has lived in Cherokee County his entire life. According to Matilda, if Appellant were released from jail, he would live with their parents. Matilda and her two daughters, who are six and eight years old, also live in the home. She stated that her daughters would not be unsupervised around Appellant should he reside with them.

Matilda also testified regarding Appellant's assets and work history. According to Matilda, Appellant could return to work if released from jail. She testified that Appellant worked for Federal Heath in excess of five years; however, she could not recall the exact length of his employment. Matilda further testified that Appellant does not have a bank account, has less than $100 to his name, and has no assets, cars, boats, livestock, real estate, or anything else that could be sold to raise the necessary bond money. Matilda testified that she and her family cannot afford to pay $100,000 toward a $1,000,000 bond. However, if the bond were reduced, they could pay $2,000 or $2,500 toward a $25,000 bond.

## Analysis

The record in this case does provide some support for a higher bail amount. For instance, the nature of the offense and the circumstances under which it was allegedly committed are factors to be considered, and this necessarily involves the punishment permitted by law. *Ex parte Clark*, 537 S.W.2d 40, 42 (Tex. Crim. App. 1976). Appellant is charged with continuous sexual abuse of a young child. To be convicted, the State must prove that Appellant committed two or more acts of sexual abuse against a child younger than fourteen years of age during a period of thirty days or more. *See* TEX. PENAL CODE ANN. § 21.02. The State has alleged that he committed eight such acts against a family member. If convicted, Appellant would be subject to confinement in the Texas Department of Corrections for a term of not less than five years and could receive a life sentence. *Id.* § 12.32. He would also be subject to a fine not to exceed $10,000. *Id.*

However, the record also demonstrates that while Appellant was employed, he lacks monetary funds and does not have a bank account. He has no real estate or other assets with which to secure money for a bond. Thus, he must rely on his family and friends for help paying any bail bond. While the ability or inability of an accused to make bail is not dispositive, it is a factor to be considered. *Rodriguez*, 595 S.W.2d at 550. Evidence at the hearing demonstrates that Appellant could pay $2,000 or $2,500 toward a $25,000 bond. Yet, the trial court set bond at an amount forty times higher than what Appellant could reasonably provide, which constitutes a de facto setting of no bond. *See DePena v. State,* 56 S.W.3d 926, 929 (Tex. App.—Corpus Christi 2001, no pet.).

Moreover, a comparison of the bail amount in this case to the amounts in cases decided by other intermediate appellate courts, leads us to conclude that the bail is too high. Although bail in excess of $1,000,000 has been upheld, such as in murder cases, these cases are distinguishable from the present case. *See, e.g., Ex parte Saldana,* No. 13-01-00360-CR, 2002 WL 91331, at *4-6 (Tex. App.—Corpus Christi Jan. 24, 2002, no pet.) (op.; not designated for publication) ($1,000,000 bail for capital murder not excessive); *see also Ex parte Pulte,* No. 02-03-00202-CR, 2003 WL 22674734, at *2 (Tex. App.—Fort Worth Nov. 13, 2003, no pet.) (mem. op.; not designated for publication) ($1,000,000 bail not excessive for solicitation of murder); *Ex parte Brown,* No. 05-00-00655-CR, 2000 WL 964673, at *2 (Tex. App.—Dallas July 13, 2000, no pet.) (not designated for publication) ($1,000,000 bail not excessive for murder).

Particularly, there is no specific evidence in this case of Appellant's risk of flight in terms of threats against the victim or evidence that Appellant intends to flee. *See Ex parte Bellanger*, No.

12-09-00246-CR, 2009 WL 4981457, at *3 (Tex. App.—Tyler Dec. 23, 2009, no pet.) (in reversing bail of $1,725,000 in indecency with a child case, noting lack of such evidence). Rather, he has familial ties to the community and a history of employment. Nor does the record contain evidence of any threats against the victim or evidence suggesting that a lower bail amount would place either the victim's safety, or that of the community, at risk.

The State argues that because of the severity of the charges and the nature of the offenses, there is both a risk to the community and a risk of flight. We agree that these factors support a higher bail, but we disagree that they support a bail of $1,000,000. "Bail amounts approved in other Texas cases have generally been well below one million dollars." *DePena*, 56 S.W.3d at 929 (bail in aggravated assault case reduced from $1,000,000 to $300,000); *see, e.g., Clemons*, 220 S.W.3d at 179 (approving total bail set at $400,000 where defendant charged with indecency with a child and aggravated sexual assault and made comments about fleeing to Mexico); *Ex parte Rean*, No. 03-09-00032-CR, 2009 WL 2902707, at *8 (Tex. App.—Austin Aug.26, 2009, no pet.) (mem. op., not designated for publication) (affirming bail of $250,000 in sexual assault case); *Ex parte Bennett*, No. 02-07-00175-CR, 2007 WL 3037908, at *4 (Tex. App.—Fort Worth Oct. 18, 2007, no pet.) (mem. op., not designated for publication) (upholding total bail of $600,000 in aggravated sexual assault of a child case); *Ex parte Bratcher*, Nos. 05-05-00634-CR, 05-05-00635-CR, 2005 WL 1634971, at *5 (Tex. App.—Dallas July 13, 2005, no pet.) (mem. op., not designated for publication) (total bail of $1,000,000 for two aggravated sexual assault of a child offenses upheld); *Bellanger*, 2009 WL 4981457, at *3.

Accordingly, after reviewing the record in this case and considering the factors in Article 17.15, we hold that the amount of Appellant's bail is unsupported by the evidence and therefore excessive. We sustain Appellant's sole issue.

### DISPOSITION

Having sustained Appellant's sole issue, we *reverse* and *remand* this case to the trial court for further proceedings consistent with this opinion.

JAMES T. WORTHEN
Chief Justice

Opinion delivered January 22, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

5

# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 22, 2020**

**NO. 12-19-00304-CR**

**EX PARTE: ROJELIO BARBOSA**

Appeal from the 2nd District Court
of Cherokee County, Texas (Tr.Ct.No. 2019-07-0408)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment be **reversed** and the cause **remanded** to the trial court **for further proceedings** in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*